HUNTER'S AMBULANCE SERVICE, INC. *v.*
THOMAS A. SHERNOW ET AL.
(AC 20973)

Foti, Flynn and Daly, Js.

Argued February 15—officially released May 28, 2002

*Kenneth W. Williams,* for the appellant (plaintiff).

*Richard M. Dighello, Jr.,* with whom was *Barbara A. Frederick,* for the appellees (defendants).

*Opinion*

FOTI, J. In this civil action sounding in professional malpractice and breach of contract, the plaintiff, Hunter's Ambulance Service, Inc., appeals from the judgment of the trial court rendered in favor of the defendants, Thomas A. Shernow and the accounting firm of Whitten, Horton and Gibney (Whitten). On appeal, the plaintiff claims that the court improperly (1) refused to strike the testimony of the defendants' expert witness, (2) found material facts that were not supported by the evidence, (3) concluded that the plaintiff had not proved that it could recover against a third person for his alleged negligence and (4) concluded that the defendants had not breached contractual duties that they owed to the plaintiff. We affirm the judgment of the trial court.

The dispute between the parties arose out of accounting services rendered to the plaintiff by Shernow, a licensed certified public accountant, who, at all times relevant, was an employee working within the scope of his employment at Whitten. The plaintiff originally brought its action in three counts, alleging negligence, breach of contract and violations of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes

§ 42-110a et seq. The court granted the defendants' motion to strike the CUTPA count and that decision is not a subject of this appeal.

The basis for the plaintiff's claim of professional malpractice originated in events that preceded the defendants' involvement with the plaintiff. In 1988, officers of the plaintiff negotiated the purchase of Professional Ambulance Service of Middlesex, Inc. (Professional Ambulance), another corporation that provided ambulance services. Prior to May, 1991, Carlton Helming, a certified public accountant, provided professional accounting services and advice to the plaintiff. During his tenure, Helming was the plaintiff's principal accountant. As part of his services, Helming assisted in negotiating the purchase of Professional Ambulance and advised the plaintiff regarding the purchase and its tax consequences.

On December 9, 1988, the plaintiff entered into an agreement with Professional Ambulance to purchase all of its stock. The parties agreed to close the sale in January, 1989. On January 18, 1989, the plaintiff completed the purchase. Subsequently, Helming prepared corporate tax returns for the plaintiff. His actions in this regard underlie the plaintiff's action. The plaintiff alleged that Helming did not advise it to schedule the closing on the purchase so that it would have occurred during 1988. If Helming had done so, the plaintiff would properly have been able to avail itself of tax savings that would have been available to it under § 338 of the Internal Revenue Code. Also, the plaintiff alleged that Helming thereafter prepared the plaintiff's 1989 and 1990 federal tax returns as if the closing on the sale had occurred in 1988, thereby assuming for the plaintiff significant tax benefits to which it was not entitled.

The professional relationship between the plaintiff and Helming began to deteriorate by the end of 1990.

In the spring of 1991, the plaintiff terminated Helming's employment and hired the defendants to serve as the plaintiff's accountant. In the early part of 1992, the Internal Revenue Service (IRS) commenced an audit of the plaintiff that focused on the plaintiff's purchase of Professional Ambulance.

In December, 1991, Helming commenced a civil action against the plaintiff to recover unpaid fees for his services. The plaintiff thereafter pleaded, as a counterclaim in that action, that Helming negligently had prepared the plaintiff's corporate tax returns. The plaintiff claimed, however, that at that time it was unaware of Helming's negligent tax treatment of its purchase of Professional Ambulance. In the present action, the plaintiff alleged that the defendants negligently failed to advise it as to the extent of Helming's errors. Specifically, the plaintiff alleged that "[a]t no time did . . . Shernow ever advise the Plaintiff and/or its agents that Helming had committed professional malpractice with respect to the Plaintiff's purchase of [Professional Ambulance] by failing to make the proper election [under § 338] and/or by failing to require that said closing be consummated prior to January 1, 1989, or, that Helming may have knowingly, but at least negligently, taken deductions on behalf of the Plaintiff to which it was not legally entitled."

The plaintiff further alleged that, on May 11, 1994, it relied on Shernow's advice and accepted $35,000 from Helming in return for a full and final release of any and all claims that it had, or may have had, against him. Shortly thereafter, on May 29, 1994, the IRS issued a notice of deficiency against the plaintiff for $203,000, along with applicable penalties and interest. This action relates directly to Helming's tax treatment of the plaintiff's acquisition of Professional Ambulance. The plaintiff also alleged that the department of revenue services for the state of Connecticut had assessed, or would

assess, additional corporate taxes, along with interest and penalties, against the plaintiff for $105,000.[1]

The plaintiff alleged that the defendants had committed professional malpractice in that they (1) failed to recognize that Helming had committed professional malpractice in his treatment of the plaintiff's acquisition of Professional Ambulance and to advise them of the same, (2) continued to treat Professional Ambulance's acquisition in the same manner as Helming had treated it for tax purposes, (3) failed to advise the plaintiff as to the extent of Helming's negligence and the plaintiff's consequent tax exposure and (4) failed to advise the plaintiff that Helming may have knowingly and improperly claimed tax deductions on its behalf that would subject the plaintiff to back taxes, penalties and interest.

The plaintiff alleged that the defendants' actions also constituted a breach of the contract for professional services that existed between the parties. In this regard, the plaintiff alleged that the defendants (1) failed to obtain all the necessary information to perform its services for the plaintiff properly, (2) failed to research or become knowledgeable of the laws and regulations applicable to the plaintiff's business and its acquisition of Professional Ambulance, (3) failed to advise the plaintiff properly, (4) failed to use the care and skill used by other certified public accountants in rendering services to the plaintiff, (5) improperly undertook to do work and to prepare and cause to be filed tax documents on the plaintiff's behalf, (6) failed to advise the plaintiff properly as to its tax liabilities, (7) advised the plaintiff as to settling its claim against Helming on the basis of an unskillful and negligent review of documents

[1] The plaintiff represents in its brief that, after exhausting its administrative and legal remedies related to the additional taxes levied on it, it paid in excess of $449,000 in overdue federal and state taxes.

and (8) continued to amortize or depreciate assets under the same tax methods as Helming had used, with full knowledge that such tax treatment was improper.

After conducting a hearing, the court rendered judgment in the defendants' favor on June 13, 2000. This appeal followed. Additional facts will be set forth in the context of the plaintiff's claims.

## I

The plaintiff first claims that the court improperly refused to strike the testimony of the defendants' expert witness, Stanley Roy. We need not reach the merits of this claim.

The defendants elicited testimony from Roy, a licensed certified public accountant with more than twenty-five years of experience in the accounting profession. Roy testified as to the standard of care applicable to Shernow and rendered his expert opinion that Shernow had not breached that standard of care.

The plaintiff thereafter filed a motion to strike Roy's testimony on the ground that his expert opinion was invalid because he had applied "a standard of care to the defendants based solely on his personal opinion and without regard to the standards of ordinary practice in the accounting industry." The court denied the plaintiff's motion, and the plaintiff now argues that the court improperly relied on Roy's testimony in reaching its decision.

We dispose of the plaintiff's claim without reaching its merits. "[B]efore a party is entitled to a new trial because of an erroneous evidentiary ruling, he or she has the burden of demonstrating that the error was harmful. . . . The harmless error standard in a civil case is whether the improper ruling would likely affect the result." (Citation omitted; internal quotation marks omitted.) *George* v. *Ericson*, 250 Conn. 312, 327, 736

A.2d 889 (1999); see also 1 B. Holden & J. Daly, Connecticut Evidence (2d Ed. 1988) § 60i, p. 385. The plaintiff is not entitled to a new trial because the court did not necessarily rely on any challenged aspects of Roy's testimony or expert opinion when reaching its decision; the court found for the defendants on the basis of several separate findings and conclusions.

The plaintiff's allegations of negligence against Shernow fit into three broad categories: (1) that Shernow, having failed to discover Helming's failure to make a § 338 election, negligently advised the plaintiff to settle the Helming litigation in accordance with the terms that it did, (2) that Shernow continued to follow Helming's improper practices and, in essence, relied on Helming's work and (3) that Shernow failed to keep the plaintiff apprised of the issues involved in the IRS audit. It is clear from a review of the court's memorandum of decision that, apart from its conclusion that Shernow had not breached the standard of care, it found that the plaintiff had failed to prove its claims against Shernow on several grounds.

In regard to the claim that Shernow improperly relied on Helming's work, the plaintiff cannot claim that any improper testimony from Roy affected the court's decision. Roy testified that Shernow did not breach the standard of care by relying on Helming's work under the circumstances of this case. Roy specifically indicated that his expert opinion in this regard was not based on the distinction that he drew between general practitioner accountants and those that he believed held the skills and training of tax specialists. This distinction is the basis for the plaintiff's claim on appeal.

Further, Kenneth Pia, a certified public accountant specializing in merger and acquisition tax planning, who had been retained by the plaintiff at the time of the Helming litigation to, among other things, review Helm-

ing's work, testified that Shernow had not breached the standard of care by failing to realize that Helming had failed to make the § 388 election. The court could have found that this opinion, apart from Roy's, constituted credible evidence when it concluded that Shernow had not acted negligently.

In regard to the plaintiff's claim that Shernow negligently advised it to settle the Helming litigation on the terms that it did, the court based its conclusion on several findings apart from the issue of the breach of the standard of care. Most significantly, the court implicitly found that the plaintiff had failed to prove the merit of its case against Helming. The court noted that the plaintiff had failed even to introduce into evidence its counterclaim against Helming. The court commented that Helming did not testify at trial and the court heard no explanation for why he acted as he did. The court concluded that the plaintiff left it "to ponder the value of the claim" against Helming.

The court also rejected the plaintiff's claim that it relied on Shernow's advice to any extent in reaching its settlement with Helming. The court found that attorneys acting on the plaintiff's behalf in this matter spoke to Shernow *the day after* they had decided to settle the Helming claim. The court concluded that the plaintiff had failed to prove both its claim that Shernow was responsible for the settlement and the value or collectibility of any judgment it might have recovered in the Helming litigation, absent the settlement. The plaintiff has not challenged the court's findings in these regards on appeal.

To the extent that the plaintiff alleged that Shernow negligently failed to keep it apprised of the issues raised in the IRS audit, Pia corroborated Shernow's testimony that he had informed Pia of the issues that remained unresolved in the audit. Further, the court concluded

that both Pia, retained by the plaintiff as an expert witness in the Helming litigation, and Alan Solomon, an attorney retained by the plaintiff in the Helming litigation, "had as much knowledge of Helming's malpractice as did Mr. Shernow." The court also found that the plaintiff had not taken adequate steps to provide Shernow with Helming's work papers and that the information contained therein would likely have helped to clarify the issues pending before the IRS. For all of these reasons, we see no reason to reverse the judgment on this ground.

## II

The plaintiff next claims that we should reverse the judgment because six of the court's factual findings were clearly erroneous. We disagree.

"We review challenges to a trial court's factual determinations under the clearly erroneous standard of review. A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence in the record to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Primary Construction Services, LLC* v. *North American Specialty Ins. Co.*, 66 Conn. App. 828, 829–30, 785 A.2d 1218 (2001). While conducting our review, we properly afford the court's findings a great deal of deference because "it is in the unique [position] to view the evidence presented in a totality of circumstances, i.e., including its observations of the demeanor and conduct of the witnesses and parties, which is not fully reflected in the cold, printed record which is available to us." (Internal quotation marks omitted.) *State* v. *Lipscomb*, 258 Conn. 68, 74, 779 A.2d 88 (2001). Having set forth our standard of review, we now address each of the plaintiff's claims in turn.

A

The court noted that Solomon had been "second only to [the plaintiff's founder] in the administrative chain of command." The plaintiff argues that Solomon was not a part of the plaintiff's administrative or executive staff but was, instead, outside legal counsel to the plaintiff.

Testifying as to Solomon's role with the plaintiff, Shernow stated, "Solomon served as more than just your traditional outside legal firm. . . . There was a real internal structure, chain of command . . . . I would see Mr. Vern Hunter at the very top of the list. I would see Alan Solomon on the second line of it, and I would see the three Hunter vice presidents underneath him. Mr. Solomon was consulted on and seemed to advise on a wide range of different operating issues and matters that came up with the Hunters." The court also heard testimony from Solomon as to his professional relationship with the plaintiff since its founding in 1963 and his role in the events underlying this appeal. Given Shernow's characterization and familiarity with the plaintiff's day-to-day operations, we cannot conclude that the court's description of Solomon's practical, even if not official, role, based on such testimony, was clearly erroneous.

B

The court noted that although "the plaintiff originally planned to have Shernow act as its expert in the Helming case, Mr. Pia assumed that role in his stead in March of 1994." The plaintiff claims that the record does not support this characterization of Shernow's role.

We look first to Shernow's assessment of his role in the Helming litigation as of the time that the plaintiff retained Pia. Shernow noted that he had talked to Solomon, who had been handling the litigation, and

informed him that he would not be "comfortable" with being deposed. Shernow further testified that Solomon retained Pia because he had a good reputation for providing testimony. Pia testified that Solomon contacted him in March, 1994, and asked him to review Helming's work. He believed that the plaintiff had hired him for a "very specific purpose and that was as an expert witness to testify to matters pertaining to Carlton Helming's malpractice."

Solomon testified that he approached Pia because he believed that Shernow's opinion in the Helming litigation could have been criticized because Shernow was "criticizing Mr. Helming and . . . was getting paid by Mr. Hunter." Solomon also noted that he believed, at that time, that he needed to bring in an outsider to evaluate Helming's work. Additionally, the court heard ample testimony from both Shernow and Pia as to their roles in the Helming matter. Given the evidence in the record, we are not left with the firm conviction that the court's evaluation of Pia's role was clearly erroneous.

## C

After discussing Shernow's reliance on Helming's work, the court noted that "[a]s late as April of 1994, Helming had not produced the material Shernow wanted . . . ." The plaintiff claims that the court's finding in this regard is clearly erroneous because the evidence demonstrated that, on three separate occasions, Helming had provided documents to Shernow.

Shernow testified that, in April, 1994, he had sought documentation from Helming in support of his tax filings for the plaintiff. Shernow noted, "I was still waiting for further work papers. The work papers I had from Helming were inconclusive . . . . Attorney Solomon came out and asked me what other work papers do you need, and I told him that we still needed something that was more conclusive on the client list . . . ." Sher-

now later testified that, by the time he met with IRS officials in February, 1995, he believed that he had enough documentation for the audit to be resolved in the plaintiff's favor. At no time did Shernow state that, despite having received documentation from Helming, he believed that he possessed all of the documentation related to his work or all of the documentation that he desired. Accordingly, we are not persuaded that the court's finding was clearly erroneous.

## D

The court noted that "[w]hile the parties disagree as to Shernow's role in the decision to settle the Helming case, the court notes that even if the plaintiff's version of events is accepted, the person who was to act as the expert at trial, Mr. Pia, and the attorney handling the case, attorney Solomon, proceeded to settle." The plaintiff argues that this statement, insofar as it implied that Pia and Solomon made the decision to settle the case, ignores the uncontroverted testimony of both Pia and Solomon that their recommendation to settle remained contingent on Shernow's assessment of the plaintiff's exposure in the audit.

The court's statement itself reflects the fact that the parties disagreed over Shernow's role in settling the Helming litigation. Solomon and Pia testified that Shernow's opinion was a major factor in the decision to settle the litigation. Solomon stated that the settlement was contingent on Shernow's assessment of Hunter's exposure in the audit. Shernow testified, however, that he was not involved in the decision to settle the litigation. Specifically, Shernow stated, "I was surprised that the case had settled before I knew about it, with the IRS audit still ongoing. And the next time I was in the office of [the plaintiff] I asked for some more details about what the numbers were and I was provided with the settlement amount."

Despite the testimony of Pia and Solomon that they relied on Shernow's opinion prior to settling the litigation, the court was free to accept Shernow's testimony that the plaintiff did not ask him to approve any proposed settlement and that he did not learn of the settlement until after it had occurred. Accordingly, we conclude that the court's finding was supported by the evidence adduced at trial.

E

The court noted that "[t]he plaintiff's argument [that] it could have recovered on any judgment [against Helming] does not take into account the lack of evidence as to malpractice coverage and the amount of coverage, whether the carrier had asserted a reservation of rights and what period of time this carrier was covering. In fact, the payment from Helming to Hunter of $35,000 as part of the settlement was paid in part by Helming. . . . Nor do we know if Helming had assets which could be reached, absent insurance coverage." The plaintiff argues that the evidence does not support the court's findings because (1) the court had before it two settlement checks from Helming, proving that Helming had personal resources and malpractice insurance coverage, and (2) the plaintiff "supplied" the court with the declaration page from Helming's malpractice insurance policy, which indicated that he carried $500,000 in coverage.

The plaintiff essentially argues that it submitted evidence sufficient to demonstrate that it could have recovered a judgment against Helming and that the court improperly ignored its evidence in this regard. On the basis of our review of the record, we note first that the plaintiff did submit two checks made payable to it as settlement in the Helming litigation. American Home Insurance Company issued one check for $25,000, and Helming's accounting firm issued a second check for

$10,000. The existence of these two checks does not demonstrate that the plaintiff could have collected a judgment against Helming. Standing alone, these checks did not necessarily prove that Helming had malpractice insurance sufficient to cover any judgment adverse to him and certainly left unanswered questions as to the amount of coverage, whether the carrier had asserted a reservation of rights or any of the terms of the policy. Likewise, these checks did not necessarily prove that Helming possessed personal assets sufficient to satisfy a judgment against him.

The plaintiff did not offer the declaration page of Helming's malpractice insurance policy into evidence during the evidentiary phase of the trial. Instead, it attached a copy of what purported to be such a declaration page to its posttrial brief to the court.[2] The plaintiff apparently took this action when the court suggested, after the parties had rested, that the plaintiff had failed to prove not only what its claim against Helming was worth in the first instance, but also whether the plaintiff would have been able to collect a judgment against him.[3] The court's finding reflected the absence of proof as to whether the plaintiff would have been able to collect a judgment against Helming.

F

The plaintiff next argues that "[t]he court found that the plaintiff offered no written evidence regarding whether it informed . . . Shernow that the Helming litigation was nearing settlement." The plaintiff argues that this finding was clearly erroneous because it submitted as evidence the time records of David Wyskiel, an attorney who, along with Solomon, represented the

---

[2] We observe that posttrial briefs afford counsel an opportunity to comment on the evidence adduced during trial. They do not afford counsel an opportunity to introduce new evidence.

[3] See footnote 4.

plaintiff in the Helming litigation. The plaintiff contends that these records are clear proof that Wyskiel telephoned Shernow on the day of the proposed settlement to advise him, among other things, of the settlement terms and to seek his advice. The plaintiff argues that this proof was uncontested at trial.

The court noted that "[t]he plaintiff offered no written evidence as to what was presented to Shernow, nor was any memorandum or writing from Shernow endorsing the settlement produced. The plaintiff relies on the testimony of attorneys Solomon and Wyskiel to the effect that they each spoke on the telephone to Shernow and obtained his opinion favoring the settlement." The court's statement fairly reflects the evidence adduced at trial.

The court noted that Wyskiel testified that he spoke with Shernow on April 27, 1994. Wyskiel's time records include a notation that he spoke with Shernow on this date. The notation does not specifically indicate what Wyskiel conveyed to Shernow, nor what, if anything, Shernow conveyed to him. Shernow testified only that he did not recall having a conversation with Wyskiel about settling the case.

The court obviously chose to discredit Wyskiel's testimony and interpreted his time record contrary to the plaintiff's interpretation of that document. The court also stated that it viewed "with skepticism" the claim that Solomon and Wyskiel spoke with Shernow on the telephone to obtain his approval of the settlement. It found that the plaintiff had settled the Helming litigation on April 26, 1994, one day before Wyskiel's time records reflect the call to Shernow. The plaintiff's claim, once again, is merely another invitation for this court to reevaluate the evidence presented at trial harmoniously with its version of the events at issue in this action. We will not do so. The trial court is not bound to accept

as true the testimony, even the uncontradicted testimony, of any witness. "[T]he trial court is free to accept or reject, in whole or in part, the evidence presented by any witness, having the opportunity to observe the witnesses and gauge their credibility." (Internal quotation marks omitted.) *Giulietti* v. *Giulietti*, 65 Conn. App. 813, 878, 784 A.2d 905, cert denied, 258 Conn. 946, 947, 788 A.2d 95, 96, 97 (2001); 2 B. Holden & J. Daly, Connecticut Evidence (2d Ed. 1988) § 125a, p. 1228. The court's evaluation of the evidence reflects a proper exercise of its fact-finding function, and we conclude that its findings were not clearly erroneous.

### III

The plaintiff next claims that the court improperly found that it failed to demonstrate that it would have been able to collect a judgment against Helming had it obtained a judgment against him. We disagree.

The record reflects that, after the parties had concluded the evidentiary phase of the trial, the court addressed the parties with respect to the filing of posttrial briefs. The court informed the attorneys that it would review the briefs prior to hearing posttrial arguments and that it had not yet resolved the claims before it. The court then informed the attorneys that it wanted them to address, in their briefs, the issue of what any claim against Helming would have been worth and the issue of whether the plaintiff would have been able to collect a judgment against Helming.[4] The plaintiff

---

[4] The court stated: "[T]here is one issue that is . . . troubling me and that I think both parties should address. And I say this to be fair to both parties . . . . This has to do with the claim that's included in the plaintiff's case to the effect that the advice of Mr. Shernow with respect to settling the Helming case renders him liable because of the consequences in that they had—if they had known what they were up against, they would not have settled. Now, what I ask you to consider there is whether the measure of damages there should not be considered—well, the focus on the measure

argues that the defendants had the burden of pleading such issues as special defenses at trial and to present evidence relevant thereto. The plaintiff also argues that the defendants had the burden to "refute [the] plaintiff's documentary evidence indicating [that] Mr. Helming had substantial malpractice insurance coverage." Essentially, the plaintiff claims that the court improperly required the plaintiff to carry the burden of proof with respect to this issue and, in the alternative, that it did so.

We need not reach the merits of this claim because, given our resolution of other issues in this appeal, any error in this regard was harmless. The court's consideration of this issue regarding the collectibility of any judgment against Helming certainly was of no consequence to its judgment because the court found "that the plaintiff [had] failed to substantiate its claim that Shernow was responsible for an allegedly unfavorable settlement." Additionally, we are mindful that the court did not find merit in the plaintiff's claim against Helming in the first instance. The court commented on the weakness in the plaintiff's claim against Helming, concluding that it was left to "ponder the value of the claim, particularly in light of the settlement that was reached." For these reasons, we need not reach the claim.

---

of damages in that situation, I think you have to evaluate what the claim against Helming was worth. We haven't heard from Helming, and all I have about the lawsuit is what I've heard, sort of, indirectly. But, it would seem to me that in order to get damages for that claim, we have to know what— what the claim was worth. And the corollary to that, assuming you're going to get a judgment against Helming, could you collect it? I don't—the second part, I'm not sure whether that's a fact." The court stated: "I'll leave it up to you guys to address that, and I tell you now so that no matter how this thing falls and what . . . findings I wind up with, or what legal conclusions are involved, I think this is one [issue] that has to be addressed by both [parties]. I'll give you ample opportunity to address it, cause it's . . . troubled me from the . . . very beginning."

## IV

Finally, the plaintiff claims that the court improperly declined to find that the defendants breached any contractual obligation owed to it. The plaintiff argues that, apart from the court's resolution of its allegations of professional malpractice, the evidence demonstrated that Shernow made assurances to the plaintiff or warranted a specific result. The plaintiff argues that the evidence likewise established that the defendants failed to satisfy their duty in a number of ways, "[c]hief among them . . . [was] defendant's improper advice based on their failure to recognize Helming's malpractice." We conclude that the record is not adequate to review this claim.

Despite its claim on appeal, the plaintiff, in its brief, recognizes that "[t]he court below failed to address in its findings whether defendant Shernow made assurances or warranted specific results to the plaintiff." Having reviewed the court's memorandum of decision, we agree that it did not make findings in this regard. The plaintiff improperly attempts in its brief to persuade us that the evidence demonstrated that Shernow breached a contractual duty that arose as a result of his assurances or representations that he would achieve a specific result for it.

Appellants bear the burden of furnishing this court with an adequate record to review their claims. Practice Book § 61-10; 1 B. Holden & J. Daly, supra, § 60i, p. 385. Absent a clear record of the factual and legal basis underlying the trial court's resolution of an issue, we are unable to review it. Accordingly, where the trial court's decision is ambiguous, unclear or incomplete, an appellant must seek an articulation or rectification; Practice Book § 66-5; or this court will not review the claim. See *CB Commercial/Hampshire, LLC* v. *Security Mutual Life Ins. Co.*, 61 Conn. App. 144, 149–50, 763 A.2d 32 (2000), cert.

denied, 255 Conn. 940, 767 A.2d 1211 (2001). That is the case with regard to this claim.

The judgment is affirmed.

In this opinion the other judges concurred.