## RICHARD D. TULISANO ET AL. *v.*
## PHILIP SCHONBERGER
## (AC 21126)

Mihalakos, Dranginis and Hennessy, Js.

Argued September 25—officially released December 17, 2002

*Michael J. Melly*, for the appellant (plaintiff Robert Tulisano).

*Eliot B. Gersten*, with whom, on the brief, was *John P. Clifford, Jr.*, for the appellee (defendant).

*Opinion*

HENNESSY, J. The plaintiff Robert Tulisano[1] appeals from the judgment of the trial court rendered in favor of the defendant, Philip Schonberger, on his breach of contract claim.[2] The plaintiff raises three claims on appeal. He contends that the court improperly found that (1) the evidence supported judgment for the defendant, (2) the plaintiff failed to provide to the defendant within a reasonable time a certain survey called for by the contract and (3) the plaintiff was not entitled to recover damages in the amount of $400,000. We affirm the judgment of the trial court.

The court found the following facts. On May 17, 1996, the defendant, as president of Albermarle Equities, Inc.,

---

[1] The named plaintiff, Richard D. Tulisano, withdrew from this appeal on November 14, 2000. We refer in this opinion to Robert Tulisano as the plaintiff.

[2] The complaint contained two additional counts not relevant to this appeal.

contracted to purchase real property from the plaintiff and Richard Tulisano.[3] The defendant deposited $40,000 with his attorney, Kevin G. Dubay, who placed it in an interest bearing account. The deposit was to be applied to the total purchase price of $400,000 at the time of the closing, July 17, 1996.

The contract contained various contingencies allowing for the termination of the contract. Specifically, the defendant could terminate the contract if he received a report from a licensed or recognized building inspector stating that the building was unsound structurally or that the mechanical, plumbing or electrical systems did not function properly. In addition, the plaintiff would be required to provide a recent survey and an estoppel certificate.[4] The contract stipulated June 17, 1996,[5] as the deadline for the defendant to terminate the contract.

The defendant hired John Wilcox, a licensed architect, to inspect and to evaluate the property to determine its condition and viability for use as a restaurant. Wilcox submitted his written report, finding that the basement contained two to three feet of water, the building lacked power and, due to the lack of power, he was unable to test the electrical, plumbing, heating and air conditioning systems.[6] He also found some interior construction work completed without the necessary permits from the town, evidence of water damage and insufficient parking spaces. The Wilcox report rec-

[3] The defendant wanted to establish a family restaurant on this property at 134 Berlin Road, Cromwell.

[4] The contract contained other termination contingencies not relevant to this appeal.

[5] The court found that on June 17, 1996, the parties orally extended the contract. On June 18, 1996, through their attorneys, the parties extended the time for completion of the contract in writing from June 17, 1996, to June 19, 1996.

[6] The plaintiff confirmed these conditions and attended the inspection with Wilcox.

ommended that significant consideration should be given to demolishing the existing structure.

On June 19, 1996, the defendant sent a termination letter and a copy of the Wilcox report to the plaintiff.[7] On June 21, 1996, Dubay received a letter faxed from the plaintiff's attorney, objecting to the termination. On July 16, 1996, one day before the scheduled closing, Dubay wrote to the plaintiff's attorney, confirming the reasons for termination contained in the June 19, 1996 letter. The letter also addressed the absence of the required survey and estoppel certificate. The plaintiff never provided the required survey or estoppel certificate to the defendant. The plaintiff also failed to inform the defendant that he had restored the power or repaired the building systems. The plaintiff thereafter initiated an action for breach of contract on December 13, 1996.

The court found that the June 19, 1996 letter terminated the relationship of the parties and entitled the defendant to the return of the $40,000 deposit. The court concluded that time was not of the essence because the parties never agreed in the contract to make it so. The court rendered judgment in favor of the defendant and ordered Dubay to return the $40,000 deposit to the defendant. This appeal followed. Additional facts will be set forth as necessary.

I

The plaintiff first claims that the court improperly found that the evidence supported judgment for the defendant. Specifically, the plaintiff argues that the court improperly found that (1) the defendant had exercised his termination right in the time allowed by the contract, (2) the defendant was justified in terminating

---

[7] The defendant sent the letter referencing the Wilcox report via facsimile and also mailed a copy to the plaintiff.

the contract because Wilcox was not a recognized or licensed building inspector and (3) the reasons contained in the Wilcox report were sufficient to cancel the contract. We disagree.

Initially, we set forth the applicable standard of review. "[W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Internal quotation marks omitted.) *Barzetti* v. *Marucci,* 66 Conn. App. 802, 807, 786 A.2d 432 (2001); see also Practice Book § 60-5. This court frequently has defined the clearly erroneous standard. "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence in the record to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . While conducting our review, we properly afford the court's findings a great deal of deference because it is in the unique [position] to view the evidence presented in a totality of circumstances, i.e., including its observations of the demeanor and conduct of the witnesses and parties, which is not fully reflected in the cold, printed record which is available to us." (Citation omitted; internal quotation marks omitted.) *Hunter's Ambulance Service, Inc.* v. *Shernow,* 70 Conn. App. 96, 104, 798 A.2d 991 (2002). We now address each of the plaintiff's arguments in turn.

A

The plaintiff argues that the court improperly found that the defendant had exercised his termination rights in the time allowed by the contract. "In real estate contracts, 'the fact that a specific time is fixed for payment or for conveyance does not make "time of the

essence"—at least, it does not make performance at the *specified* time of the essence.' . . . 3A Corbin, Contracts § 716, p. 365 (1960)." (Emphasis in original.) *Kakalik* v. *Bernardo*, 184 Conn. 386, 392, 439 A.2d 1016 (1981). When the parties to a real estate contract want to fix a specific date for performance, we generally have required them to express specifically in the contract that time is of the essence; otherwise, performance within a reasonable time will satisfy the contract. See *Bethlehem Christian Fellowship, Inc.* v. *Planning & Zoning Commission*, 58 Conn. App. 441, 446, 755 A.2d 249 (2000). "Where the agreement does not specifically state that time is of the essence, it is presumed not to be unless the parties have expressed a contrary intent." *Mihalyak* v. *Mihalyak*, 11 Conn. App. 610, 616, 529 A.2d 213 (1987).

In the present case, ample evidence existed to support the court's finding that the parties to the contract for the purchase of the real estate did not intend to make time of the essence. Specifically, the parties did not include the phrase "time is of the essence" in the contract. The termination subparagraphs contain varying time periods. One subparagraph of the contract contained a thirty day time period for the defendant to exercise his termination rights. The remaining termination subparagraphs, however, contain varying time periods, including some without time restrictions.[8]

The court also found that the parties orally, and then in a subsequent writing, agreed to extend the thirty day time restriction of the contract. The plaintiff disputes the validity of that extension. Regardless of whether

[8] For example, the contract required the plaintiff to provide the survey within twenty days from the execution of the contract. The contract also permitted the defendant to give written termination due to pest infestation within seven days of receiving a report of said infestation. Finally, the subparagraph requiring the property to be in compliance with all applicable laws did not contain a time restriction.

the extension was valid, we conclude that the court's finding that time was not of the essence to the contract was not clearly erroneous.

B

The plaintiff next argues that the court improperly found that the defendant was justified in terminating the contract because Wilcox was not a licensed or recognized building inspector. The court found that Wilcox, a licensed architect, satisfied the recognized building inspector requirement of the contract.[9] Wilcox testified at trial that architects provide the service of investigating buildings. He stated that he practiced as a licensed architect for twenty years, and had previous experience inspecting buildings for the purpose of repair, remodeling and preliminary analysis, all of which qualified him to perform building inspections. He further testified that building inspections were "absolutely essential" to his job. Finally, he stated that he did not know of any restriction imposed by the state on his ability to inspect buildings. The General Assembly has determined that an architect provides evaluations of structural designs.[10] In 1996, no statute specifically identified a "recognized building inspector" with the ability to conduct a building inspection as described in the contract between the parties.

The court relied on Wilcox's testimony and report to determine his status as a recognized building inspector.

[9] The court found that Wilcox was not a licensed building inspector and instead focused its inquiry as to whether Wilcox was a recognized building inspector. The plaintiff's brief focuses solely on the license requirement and does not address whether Wilcox was a recognized building inspector.

[10] General Statutes § 20-288 (3) provides in relevant part: " 'The practice of architecture' or 'practice architecture' means rendering or offering to render service by consultation, investigation, evaluations, preliminary studies, plans, specifications and coordination of structural factors concerning the aesthetic or structural design and contract administration of building construction or any other service in connection with the designing or contract administration of building construction . . . ."

Accordingly, we conclude that the finding by the court that Wilcox was a recognized building inspector was supported by evidence in the record and was not, therefore, clearly erroneous.

C

The plaintiff next argues that the court improperly found that the reasons contained in the Wilcox report were sufficient to cancel the contract. The court found that the June 19, 1996 letter terminated the relationship between the parties. The defendant sent that letter to the plaintiff and referenced the attached Wilcox report. The letter provided further reasons for termination, including the absence of a kitchen, the necessity to rebuild the structure to meet local requirements and the need for sufficient site work beyond those reasons contained in the Wilcox report. Relevant to this appeal, the Wilcox report cited the presence of water in the basement, the absence of electrical power, the inability to evaluate the mechanical and electrical systems, and the condition of the plumbing systems.

The contract was contingent on the defendant's receiving a report that stated that the mechanical, electrical and plumbing systems were operational and in good repair. The contract allowed for the plaintiff to repair those defects at his expense. The defendant received the Wilcox report indicating the deficient building conditions. He then notified the plaintiff, in the letter of June 19, 1996, of those conditions and the decision to exercise his termination right. After receipt of the notification, the plaintiff failed to repair the deficient systems and conditions at his expense or to notify the defendant that he had restored power to the building so that the systems could be evaluated.

Accordingly, we conclude that the court's finding that the defendant properly exercised his right to terminate

the contract by letter dated June 19, 1996, was not clearly erroneous.

## II

The plaintiff next claims that the court improperly found that he had failed to provide the survey to the defendant within a reasonable time. He argues that the defendant committed an anticipatory breach and therefore discharged the plaintiff from his obligation to provide the survey. We disagree.

In part I C, we determined that the court's finding that the defendant properly exercised his right, via the June 16, 1996 letter, to terminate the contract was not clearly erroneous. The termination was based on the fact that the defendant did not receive a report indicating that the mechanical, electrical and plumbing systems were operational and in good repair. The plaintiff, after receiving the June 16, 1996 letter, failed to engage in any effort to repair the deficient conditions. The defendant, therefore, did not commit an anticipatory breach, but rather validly exercised his option to terminate the contract.

We also note that the court did not base its decision on the plaintiff's failure to provide the defendant with a survey. The defendant sent the plaintiff a letter on July 16, 1996, noting the plaintiff's failure to provide a survey. The court found that this notice was given within a reasonable time. We conclude, however, that the court's determination that the failure by the plaintiff to provide the survey was extraneous to the court's resolution of the case in that the June 16, 1996 letter served as a valid termination of the contract. It is, therefore, unnecessary for us to decide whether the court's determination that the plaintiff failed to provide the survey within a reasonable time was improper because the defendant validly terminated the contract.

## III

The plaintiff's final claim is that he is entitled to damages for the full amount of the contract, $400,000. In light of our decision in parts I and II upholding the findings of the court in favor of the defendant, we need not address that claim.

The judgment is affirmed.

In this opinion the other judges concurred.