CONNECTICUT EDUCATION ASSOCIATION, INC. *v.*
MILLIMAN USA, INC., ET AL.
(AC 28123)

Gruendel, Lavine and Pellegrino, Js.

Argued October 9, 2007—officially released January 29, 2008

*Martin A. Gould*, with whom was *Mark W. Baronas*, for the appellant (plaintiff).

*Paul E. Pollock*, for the appellee (defendant Sorokin, Gross & Hyde, P.C.).

*Opinion*

PELLEGRINO, J. The plaintiff, the Connecticut Education Association, Inc., appeals from the judgment, rendered after a trial to the court, in favor of the defendant Sorokin, Gross & Hyde, P.C., a Connecticut law firm.[1] On appeal, the plaintiff claims that the trial court improperly (1) found that there was no contract between the parties as alleged in the complaint and (2) determined that part of the complaint sounded in tort,

---

[1] The plaintiff also brought this action against Milliman USA, Inc., an actuarial and consulting firm; Barrie Wetstone, a partner in the defendant law firm; and Sharon Kowal-Freilich, an attorney employed by the defendant law firm. The counts directed against Wetstone and Kowal-Freilich were severed by agreement. Additionally, the plaintiff has not appealed from the judgment rendered in favor of Milliman USA, Inc. Accordingly, we refer in this opinion to Sorokin, Gross & Hyde, P.C., as the defendant.

rather than contract. We affirm the judgment of the trial court.[2]

The court made the following factual findings relevant to our discussion. The plaintiff is a union that represents public school teachers. The plaintiff's employees are unionized, and the benefits provided by the pension plan for these employees were subject to collective bargaining. The defendant advised the plaintiff with respect to its pension plan and related matters from 1989 until 1998. Milliman USA, Inc. (Milliman), provided the plaintiff with actuarial services during this time period.

In 1995, the plaintiff became concerned with the costs of funding its employees' pension plan. At this time, eligible retirees could choose to receive their pension either in a lump sum or in periodic payments. Both options included an annual cost of living adjustment (annual adjustment) of 2 percent. The plaintiff realized that an unexpected number of retirees were selecting the lump sum option, which caused a financial strain on the pension plan.

Two directors of the plaintiff, John Yrchik, the executive director, and Carol DeBarba, the director of administration and finance, sought ways to reduce this burden on the pension plan. Yrchik and DeBarba, acting on behalf of the plaintiff, requested assistance from both Milliman and the defendant. Specifically, DeBarba contacted Barrie Wetstone, the partner in the defendant law firm who handled the plaintiff's account, and requested a legal opinion as to whether certain proposed changes to the pension plan were permissible.

[2] The defendant claims, as alternative grounds for affirming the judgment of the court, that there was no breach of the alleged contract and that the plaintiff failed to prove damages resulting from the alleged breach of contract. As a result of our resolution of the issues raised by the plaintiff, we need not reach these claims.

One of the changes proposed by the plaintiff was whether the annual adjustment could be eliminated when a retiree chose the lump sum option. The plaintiff's request for a legal opinion was faxed to the defendant on November 2, 1995.

In a letter dated November 28, 1995, Sharon Kowal-Freilich, an associate in the defendant law firm, formally responded to the plaintiff's request. This letter opined that the annual adjustment could be eliminated when a retiree chose the lump sum option, as long as it is done only on a prospective basis. The plaintiff used this information in its negotiations with the Connecticut Education Association Professional Staff Organization, the union that represented the professionals employed by the plaintiff. The plaintiff and that union ultimately agreed to amend the pension plan. Specifically, the amendment provided that if a retiree elected the lump sum option, then the annual adjustment was eliminated. If, however, a retiree opted for periodic payments, then he or she was entitled to a 2.5 percent annual adjustment. The defendant drafted language to amend the pension plan in accordance with this agreement.

On or about the end of August, 1998, the plaintiff ended its professional relationship with the defendant. The plaintiff hired a law firm based in Washington, D.C., Bredhoff & Kaiser (Bredhoff), as counsel with respect to the pension plan. The plaintiff then reached an identical arrangement with the Associated Staff Organization of the Connecticut Education Association, the union representing the staff members of the plaintiff, with respect to the annual adjustments. Bredhoff incorporated these changes. Additionally, Bredhoff submitted the pension plan to the Internal Revenue Service for review, as a cautionary measure, and received an approval letter[3] in March, 1999.

[3] Stuart Lewis, a lawyer who specialized in employee benefit plans, testified that "[a] properly obtained [Internal Revenue Service] determination letter signifies that the [Internal Revenue Service] has approved in form the

On April 19, 2001, an actuary employed by Milliman faxed DeBarba information regarding a recent federal District Court case, *Laurenzano* v. *Blue Cross & Blue Shield of Massachusetts*, 134 F. Sup. 2d 189 (D. Mass. 2001). The actuary was concerned that the disparate treatment of the annual adjustments was not permissible. DeBarba eventually requested a legal opinion from Bredhoff. On October 19, 2001, Bredhoff "advised that the discrepancy in treatment was improper" and recommended reverting to the 2 percent annual adjustment for both lump sum and annuity pensions. The plaintiff unilaterally amended the pension plan to enact this recommendation, and, as a result, a complaint was filed with the National Labor Relations Board. During the pendency of this complaint, the plaintiff incorporated a 2.5 percent annual adjustment as to both options, which subsequently was negotiated down to 2 percent.

The plaintiff commenced the present action, and the operative complaint, dated March 21, 2005, alleged, inter alia, negligence and breach of contract on the part of Milliman, and breach of contract by the defendant.[4] The court rendered judgment in favor of Milliman and the defendant on September 22, 2006. With respect to the claim against the defendant, the court concluded that it was not "persuaded by a preponderance of the evidence that [the plaintiff] and [the defendant] entered into the agreement which has been alleged." This appeal followed. Additional facts will be set forth as necessary.

qualifications of the plan. . . . Qualification meaning meeting the qualification requirement of the Internal Revenue Code."

[4] The plaintiff's original complaint, dated March 15, 2002, contained two counts directed against the defendant. Count three of that complaint alleged that the plaintiff sustained damages and losses as a result of the defendant's "carelessness, negligence and breach of the standard of care . . . . " Count four of that complaint set forth a breach of contract claim. The defendant moved for summary judgment with respect to both counts. The plaintiff withdrew its negligence claim against the defendant, and the court denied the motion for summary judgment with respect to the breach of contract claim.

## I

The plaintiff first claims that the court improperly found that there was no contract between the parties as alleged in the plaintiff's complaint. Specifically, it argues that there was no conflicting evidence regarding the critical terms of the contract. We are not persuaded.

The following additional facts are necessary for our resolution of this issue. In paragraph four of count three of the plaintiff's operative complaint, the following was alleged: "On or about 1999, the defendant . . . contracted with the [plaintiff] to provide the [plaintiff] with competent and professional legal services necessary and appropriate to maintain the [plaintiff's] Pension Plan . . . in good standing as a qualified defined benefit pension plan, under the Internal Revenue Code . . . and the Employment Retirement Income Security Act [of 1974 (ERISA), 29 U.S.C. § 1101 et seq.] . . . and agreed, as part of said contract, to perform said services with due diligence and reasonable care." In its answer, the defendant denied this allegation.

DeBarba testified that she was employed by the plaintiff from 1993 until January, 2005. One of her responsibilities was to oversee the pension plan. DeBarba acknowledged that the defendant had advised the plaintiff regarding the plan beginning in the late 1980s, prior to her employment with the plaintiff. She testified that Wetstone and Kowal-Freilich drafted plan amendments and reviewed the plan to keep it in compliance with the law. She further explained that this arrangement had been established prior to her employment with the plaintiff.

Yrchik testified that he was the plaintiff's executive director starting in May, 1995. He admitted that, at the time this employment commenced, the defendant already had been in place as pension plan counsel.

Specifically, Yrchik stated: "[The plaintiff] had an ongoing relationship with the [defendant]. If we needed legal opinions, we asked the [defendant]. If we needed plan amendments to be drafted, the [defendant] drafted them, and the [defendant] was responsible for ensuring that the plan was in compliance with the federal law."

Kowal-Freilich testified that she began working for the defendant in 1985 and remained in its employ until December, 2000.[5] She began practicing in the employment benefit department in late 1989 or early 1990. During cross-examination, the plaintiff's counsel questioned Kowal-Freilich as follows:

"Q. And your arrangement with the [plaintiff] was to help them with their pension plan and to keep it in compliance with the [Internal Revenue Service] code and ERISA, correct?

"A. Correct.

"Q. And so you answered any questions that they would pose to you regarding the pension plan?

"A. Correct. . . .

"Q. You would tell them when they were out of compliance or when they were in compliance?

"A. We would tell them what they needed to do to address a particular issue to stay in compliance. Yeah.

"Q. Okay. If you became aware of a change in the law, whether through a new case or a new regulation or something that would put the compliance of their plan in jeopardy, would you—would it be part of your arrangement with them to let them know?

"A. Yes.

---

[5] Specifically, Kowal-Freilich stated that in 1985, she obtained employment with the firm of Gross, Hyde and Williams. That law firm merged with Sorokin and Sorokin in 1989, resulting in the formation of the defendant.

"Q. And that was the agreement that you had with them, that you would do that?

"A. *Well, yeah, I guess.*" (Emphasis added.)

In its memorandum of decision, the court noted that the plaintiff had alleged a "rather precise contractual agreement . . . ." Furthermore, the court found that the plaintiff failed to prove, by a preponderance of the evidence, that the parties had entered into the contract alleged in the operative complaint. The court further found that the defendant did not promise the specific result of ensuring that the pension plan would remain compliant with the Internal Revenue Service code and ERISA standards. On appeal, the plaintiff maintains that the court's findings were improper because the "testimony presented by both parties was that [the defendant] was responsible for ensuring that the [plaintiff's] plan was in compliance with the [Internal Revenue Service] code and ERISA."

As a preliminary matter, we set forth certain legal principles germane to our discussion. "It is well settled that the existence of a contract is a question of fact." (Internal quotation marks omitted.) *Stevenson Lumber Co.-Suffield, Inc.* v. *Chase Associates, Inc.*, 284 Conn. 205, 216, 932 A.2d 401 (2007); *Aquarion Water Co. of Connecticut* v. *Beck Law Products & Forms, LLC*, 98 Conn. App. 234, 238, 907 A.2d 1274 (2006); see also C. Tait, Connecticut Evidence (3d Ed. 2001) § 3.6.2, p. 147. "Whether the plaintiff sustained his burden of proof is a question of fact for the trier. Our job in reviewing a factual determination of the trial court is limited. We are not the finders of fact; that is for the trial court. . . . Our job is merely to examine if there is sufficient evidence in the record to support the decision of the trial court." (Citation omitted; internal quotation marks omitted.) *Northeast Gunite & Grouting Corp.* v. *Chapman*, 20 Conn. App. 201, 203–204, 565 A.2d 256 (1989).

Put differently, the court's evaluation of the evidence is a proper exercise of its fact-finding function, and its findings may be upset only if we determine them to be clearly erroneous. See *Hunter's Ambulance Service, Inc.* v. *Shernow*, 70 Conn. App. 96, 111, 798 A.2d 991 (2002).

"In a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . It is within the province of the trial court, as the fact finder, to weigh the evidence presented and determine the credibility and effect to be given the evidence." (Citation omitted; internal quotation marks omitted.) *Cadle Co.* v. *D'Addario*, 268 Conn. 441, 462, 844 A.2d 836 (2004); see also *Notopoulos* v. *Statewide Grievance Committee*, 277 Conn. 218, 227, 890 A.2d 509 ("[c]redibility must be assessed . . . not by reading the cold printed record, but by observing firsthand the witness' conduct, demeanor and attitude" [internal quotation marks omitted]), cert. denied, 549 U.S. 823, 127 S. Ct. 157, 166 L. Ed. 2d 39 (2006); *Normand Josef Enterprises, Inc.* v. *Connecticut National Bank*, 230 Conn. 486, 507, 646 A.2d 1289 (1994).

In the present case, the court heard testimony from three witnesses, DeBarba, Yrchik and Kowal-Freilich with respect to the arrangement between the plaintiff and the defendant. None of the witnesses provided any direct testimony regarding the origin, formation, details or scope of the contract between the parties. No written contract was entered into evidence. No testimony was given by any partner in the defendant law firm or by any of the plaintiff's employees or supervisors. DeBarba and Yrchik were not employed at the time that the defendant was hired as legal counsel for the pension plan. Kowal-Freilich stated that it was her understanding that the arrangement was for the defendant to keep

the pension plan in compliance with the Internal Revenue Service code and ERISA. At the conclusion of her testimony, however, she clearly demonstrated some uncertainty as to the scope of the agreement that existed.

"Because it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings. . . . In reviewing factual findings, [w]e do not examine the record to determine whether the [court] could have reached a conclusion other than the one reached. . . . Instead, we make every reasonable presumption . . . in favor of the trial court's ruling." (Internal quotation marks omitted.) *Stevenson Lumber Co.-Suffield, Inc.* v. *Chase Associates, Inc.*, supra, 284 Conn. 216–17. Furthermore, "[t]he trial court is not bound by the uncontradicted testimony of any witness." (Internal quotation marks omitted.) *West Farms Mall, LLC* v. *West Hartford*, 279 Conn. 1, 17, 901 A.2d 649 (2006); see also *Bieluch* v. *Bieluch*, 199 Conn. 550, 555, 509 A.2d 8 (1986); *Moss* v. *Foster*, 96 Conn. App. 369, 378 n.6, 900 A.2d 548 (2006) (trier of fact can disbelieve any evidence, even if uncontradicted); *Giulietti* v. *Giulietti*, 65 Conn. App. 813, 878, 784 A.2d 905 (trial court free to reject uncontradicted testimony of witness), cert. denied, 258 Conn. 946, 947, 788 A.2d 95, 96, 97 (2001); *State* v. *Alvardo*, 62 Conn. App. 102, 110–11, 773 A.2d 958 (trier of fact free to reject uncontradicted testimony and equally free to reject part of witness' testimony even if other parts credible), cert. denied, 256 Conn. 907, 772 A.2d 600 (2001). Put another way, "[a]bsence of direct contradiction by the mouth of a witness does not make a fact undisputed within the meaning of the rule. . . . The trial court is at liberty to discredit any witness or multitude of witnesses, if it deems that it has cause to do so. It is one of the important functions of a trier to determine the relative credit to be given to oral evidence." (Internal quotation

marks omitted.) *Greco* v. *Morcaldi*, 145 Conn. 685, 687, 146 A.2d 589 (1958); *State* v. *Coulombe*, 143 Conn. 604, 608, 124 A.2d 518 (1956).

On the basis of our review of the record, we conclude that the court was free to conclude that the plaintiff failed to establish the existence of the agreement alleged in its complaint. See, e.g., C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 3.1, pp. 36–37. We are not presented with a situation in which there is uncontroverted, overwhelming documentary evidence supporting the existence of the contract alleged in the plaintiff's complaint that would warrant a departure from the general rule that permits a trial court to reject even uncontested evidence. See *Willow Funding Co., L.P.* v. *Grencom Associates*, 246 Conn. 615, 623, 717 A.2d 1211 (1998). Instead, the court was presented with testimony from three witnesses, none of whom participated in the formation of the alleged agreement between the parties. In the exercise of its fact-finding responsibility, the court concluded that the evidence did not support the contract alleged. Restricted by our limited scope of review, we cannot conclude that this finding was improper.

We decline the plaintiff's invitation to second-guess the court's assessment of the credibility of the witnesses. See *Normand Josef Enterprises, Inc.* v. *Connecticut National Bank*, supra, 230 Conn. 507. The court was able to observe the witnesses' demeanor and to judge their credibility. It was within that court's discretion to find that the evidence was insufficient to establish the existence of the contract alleged in the plaintiff's operative complaint. Consequently, we cannot say that the court's decision was clearly erroneous.

II

The plaintiff next claims that the court improperly determined that part of the complaint sounded in tort,

rather than contract. Specifically, it argues that our jurisprudence requires nothing more than an allegation that the defendant breached the implied agreement to use due diligence and reasonable care to establish its breach of contract claim. We agree in part with the plaintiff but affirm the decision of the court on other grounds.[6]

The following additional facts are necessary for our discussion. In the operative complaint, the plaintiff alleged that the defendant agreed, "as part of said contract, to perform said services with due diligence and reasonable care." In response to this allegation, the court, in its memorandum of decision, stated: "To the extent that the third count alleges that legal services were not performed 'with due diligence and with reasonable care,' then the claim functionally sounds in tort and is barred by the statute of limitations. I do not find that any more specific agreement was mutually agreed to."[7]

The plaintiff contends that a party may bring a claim of malpractice *or* breach of contract[8] on the basis of inadequately performed professional services. We agree with this general statement of the law. "It is well settled that an attorney may be subject to a claim for breach of contract arising from an agreement to perform professional services. . . . In a claim such as this, the client [usually] has the option to sue for either breach

---

[6] "[I]t is axiomatic that [w]e may affirm a proper result of the trial court for a different reason." (Internal quotation marks omitted.) *Wilson* v. *Jefferson*, 98 Conn. App. 147, 161 n.12, 908 A.2d 13 (2006).

[7] "Where the complaint alleges legal malpractice based on negligence, the tort statute of limitations applies." *Shuster* v. *Buckley*, 5 Conn. App. 473, 477, 500 A.2d 240 (1985). General Statutes § 52-577 provides: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."

[8] General Statutes § 52-576 (a) provides: "No action for an account, or on any simple or implied contract, or on any contract in writing, shall be brought but within six years after the right of action accrues, except as provided in subsection (b) of this section."

of an implied contract, negligence or both." (Citation omitted; internal quotation marks omitted.) *Celentano* v. *Grudberg*, 76 Conn. App. 119, 124–25, 818 A.2d 841, cert. denied, 264 Conn. 904, 823 A.2d 1220 (2003); see also *Mac's Car City, Inc.* v. *DeNigris*, 18 Conn. App. 525, 530, 559 A.2d 712, cert. denied, 212 Conn. 807, 563 A.2d 1356 (1989). That is not to say, however, that a party "may bring an action in both negligence and contract merely by couching a claim that one has breached a standard of care in the language of contract. Thus, we believe that a claim that a defendant promised to work diligently or in accordance with professional standards is not made a contract claim simply because it is couched in the contract language of promise and breach. Additionally, that case is distinguishable from a true contract claim in which a plaintiff asserts that a defendant who is a professional breached an agreement to obtain a specific result." *Caffery* v. *Stillman*, 79 Conn. App. 192, 197, 829 A.2d 881 (2003).

The question, then, is whether the allegations in the third count of the plaintiff's operative complaint sound in contract or tort. If a contract claim was set forth, then the six year statute of limitations applied. If a tort claim was set forth, then the court properly concluded that it was time barred by the three year statute of limitations. We begin our analysis with the observation that the interpretation of pleadings is always a question of law for the court, and our review, therefore, is plenary. See id.; see also *Carpenter* v. *Commissioner of Correction*, 274 Conn. 834, 842, 878 A.2d 1088 (2005).

A brief review of the relevant case law will facilitate our discussion. In *Shuster* v. *Buckley*, 5 Conn. App. 473, 478, 500 A.2d 240 (1985), we stated: "Where the plaintiff alleges that the defendant negligently performed legal services and failed to use due diligence the complaint sounds in negligence, even though he also alleges that

he retained him or engaged his services." See also *Alexandru* v. *Strong*, 81 Conn. App. 68, 79, 837 A.2d 875, cert. denied, 268 Conn. 906, 845 A.2d 406 (2004). In *Hill* v. *Williams*, 74 Conn. App. 654, 813 A.2d 130, cert. denied, 263 Conn. 918, 822 A.2d 242 (2003), we concluded that allegations of a lawyer's refusal to take certain actions indicated an intentional act rather than inadvertence or negligence and went beyond "being merely couched in the language of tort . . . ." (Internal quotation marks omitted.) Id., 659. Finally, in *Rosato* v. *Mascardo*, 82 Conn. App. 396, 410, 844 A.2d 893 (2004), we rejected the argument that "Connecticut law does not recognize a medical malpractice claim that proceeds on a contract theory unless there has been a claim of a breach of a promise to achieve a particular result . . . ." We examined the complaint and concluded that it did not set forth a cause of action of negligence or malpractice but instead "specified alleged acts of the defendant that would constitute a deviation from the alleged agreement between the parties." Id., 411.

The plaintiff alleged that the defendant agreed to maintain the pension plan in compliance pursuant to the Internal Revenue Service code and ERISA "and agreed, as part of said contract, to perform said services with due diligence and reasonable care." It further alleged that the defendant breached the contract, inter alia, by failing "to provide competent and professional legal services necessary and appropriate to maintain the [pension plan] in good standing as a qualified defined benefit pension plan, and to perform said services with due diligence and reasonable case." We conclude that these allegations set forth a breach of contract claim and are more than a malpractice claim couched in the language of promise and breach. The plaintiff's allegations refer to specific actions required by the plaintiff, that is, that the defendant maintain the pension plan in

compliance with the Internal Revenue Service code and ERISA. The operative complaint further sets forth a claim that the defendant had agreed to undertake those specific actions with due diligence and reasonable care. We conclude, contrary to the court, that the plaintiff's claim does not functionally sound in tort.

The application of an equally well established principle controls the resolution of the plaintiff's claim. *"It is axiomatic that a plaintiff may rely only upon what he has alleged [and] the right of a plaintiff to recover is limited to the allegations of his complaint. . . .* What is in issue is determined by the pleadings and these must be in writing." (Emphasis added; internal quotation marks omitted.) *Saye* v. *Howe*, 92 Conn. App. 638, 642, 886 A.2d 1239 (2005); see also *Journal Publishing Co.* v. *Hartford Courant Co.*, 261 Conn. 673, 686, 804 A.2d 823 (2002). We explained in *Monetary Funding Group, Inc.* v. *Pluchino*, 87 Conn. App. 401, 867 A.2d 841 (2005), that "[p]leadings have their place in our system of jurisprudence. While they are not held to the strict and artificial standard that once prevailed, we still cling to the belief, even in these iconoclastic days, that no orderly administration of justice is possible without them. . . . *The purpose of a complaint . . . is to limit the issues at trial,* and such pleadings are calculated to prevent surprise. . . . *It is fundamental in our law that the right of a [party] to recover is limited to the allegations in his [pleading]. . . . Facts found but not averred cannot be made the basis for a recovery."* (Emphasis added; internal quotation marks omitted.) Id., 414.

In the present case, the plaintiff's allegations that the defendant failed to perform its services with due diligence and reasonable care were intertwined and commingled with the allegation of "a rather precise

contractual agreement . . . ." It was not a general allegation of a failure on the part of the defendant to exercise due diligence. As we have noted, the plaintiff alleged that the defendant "agreed, as part of said contact, to perform said services with due diligence and reasonable care." In part I, we concluded that the court properly determined that that plaintiff failed to sustain its burden with respect to the existence of the contract between the parties. As a result of this finding, there was no contract obligating the defendant to perform its services with due diligence. Simply put, the plaintiff did not allege a general failure of the defendant to perform with due diligence and reasonable care. Instead, it claimed that the defendant failed to act with due diligence and reasonable care with respect to a contract specifically obligating the defendant to maintain the pension plan in good standing under the Internal Revenue Service code and ERISA. The court concluded that the plaintiff had failed to prove "the assertion that [the defendant] in effect promised the specific result of the plan's being in compliance with all Internal Revenue Service and ERISA standards." The defendant did not owe the plaintiff any contractual duty to perform its services. We conclude, therefore, that the court properly rendered judgment in favor of the defendant.

The judgment is affirmed.

In this opinion the other judges concurred.