STEVENSON LUMBER COMPANY-SUFFIELD, INC.
*v.* CHASE ASSOCIATES, INC., ET AL.
(SC 17656)

Borden, Norcott, Katz, Vertefeuille and Zarella, Js.*

---

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

Argued April 18—officially released October 16, 2007

*Paul G. Ryan*, with whom, on the brief, was *Geoffrey S. Pope*, for the appellant-appellee (plaintiff).

*Glenn T. Terk*, with whom, on the brief, was *Katherine L. Matthews*, for the appellee-appellant (defendant John J. Doran).

*Opinion*

BORDEN, J. The plaintiff, Stevenson Lumber Suffield, Inc.,[1] commenced this action against the defendants, Chase Associates, Inc. (Chase Associates), Chase Homes, Inc. (Chase Homes), Chase Orchards, LLC (Chase Orchards), Jodie T. Chase and John J. Doran,

---

[1] The plaintiff filed the present action under the name Stevenson Lumber Company-Suffield, Inc. The plaintiff subsequently filed a motion to correct its name to Stevenson Lumber Suffield, Inc., which the trial court granted. See Practice Book § 9-20. Accordingly, we refer to the plaintiff as Stevenson Lumber Suffield, Inc. We note, however, that the plaintiff formerly was known as Laureno Stevenson Lumber, Inc., Laureno Stevenson Millwork, Inc., and Stevenson Millwork Suffield, Inc.

seeking to recover compensatory damages, punitive damages and attorney's fees based on the defendants' failure to pay for construction materials and forgery of mechanic's lien waivers. On appeal, the plaintiff claims that the trial court improperly: (1) found that Chase Associates had not contracted with the plaintiff for the purchase of construction materials; (2) concluded that personal guarantees executed by Chase and Doran in favor of the plaintiff's predecessor in interest, Laureno Lumber and Millwork, Inc. (Laureno Lumber), had not been assigned to the plaintiff; (3) declined to award punitive damages and attorney's fees under the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110b et seq.;[2] and (4) found that Doran had not violated the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962 et seq., by forging mechanic's lien waivers in violation of 18 U.S.C. § 1344.[3] On cross appeal,

[2] General Statutes § 42-110b (a) provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

[3] Title 18 of the United States Code, § 1962, provides: "(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern or racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.

"(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

Doran[4] claims that the trial court improperly found that he had violated CUTPA because: (1) the plaintiff failed to establish that Doran's forgery of mechanic's lien waivers proximately caused the plaintiff to suffer an ascertainable loss; and (2) the plaintiff impliedly had ratified Doran's conduct.[5] We conclude that the evidence was insufficient to support the plaintiff's CUTPA claim and, therefore, we reverse in part the judgment of the trial court. We affirm the judgment of the trial court in all other respects.

The record reveals the following undisputed facts. Chase Associates, Chase Homes and Chase Orchards are land development and real estate companies founded and operated by Chase and Doran. At some point in 1997, Chase Orchards began developing a fifty-

---

"(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

"(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

Title 18 of the United States Code, § 1961 (1) (B), defines the term " 'racketeering activity' " in relevant part as "any act which is indictable under any of the following provisions of title 18, United States Code . . . section 1344 (relating to financial institution fraud) . . . ."

Title 18 of the United States Code, § 1344, provides: "Whoever knowingly executes, or attempts to execute, a scheme or artifice—

"(1) to defraud a financial institution; or

"(2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;

"shall be fined not more than $1,000,000 or imprisoned not more than [thirty] years, or both."

[1] Although the cross appeal appears to have been filed on behalf of all five defendants, the claims raised therein pertain only to the trial court's judgment against Doran. Accordingly, we refer to Doran as the defendant on the cross appeal.

[5] The plaintiff appealed and Doran cross appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeals to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

one lot subdivision known as Chase Orchards (Chase Orchards subdivision) in the town of South Windsor. Doran ordered construction materials for the Chase Orchards subdivision from Laureno Lumber, a lumber company from which Doran previously had ordered construction materials on behalf of Chase Associates and Chase Homes, doing business as Chase Associates. Although Laureno Lumber delivered the construction materials to the Chase Orchards subdivision, its billing invoices listed Chase Associates as the purchaser. Additionally, Laureno Lumber mailed the billing invoices to Chase Associates at 2033 Ellington Road in South Windsor, a mailing address shared by Chase Orchards. Moreover, Chase Orchards remitted payments for these materials via corporate checks issued on a Chase Orchards checking account. Neither Chase Associates nor Chase Orchards paid Laureno Lumber for all of the materials delivered, however, and approximately $133,442.68 remains past due.

Both Chase and Doran entered into various credit agreements with Laureno Lumber on behalf of Chase Associates and Chase Homes, doing business as Chase Associates. Specifically, on November 17, 1994, Chase executed a credit agreement on behalf of Chase Homes, doing business as Chase Associates; on September 12, 1995, both Chase and Doran executed a credit agreement on behalf of Chase Homes, doing business as Chase Associates; on December 9 1996, Doran executed a credit agreement on behalf of Chase Associates; and on December 16, 1996, both Chase and Doran executed a credit agreement on behalf of Chase Associates. Each of these credit agreements provides in relevant part: "In consideration of [Laureno Lumber] extending credit to [b]uyer, the undersigned individuals unconditionally, jointly and severally, guarantee the payment of any and all amounts owed to [Laureno Lumber] by the [b]uyer and agrees to pay all costs of collection,

including a reasonable attorney's fee, together with interest on any unpaid balance at the highest rate allowed by law, where applicable."

Meanwhile, in October, 1996, Laureno Lumber sold its assets to the plaintiff. Thereafter, on November 25, 1996, "[i]n consideration of and as part of the purchase and sale" of assets, Laureno Lumber agreed to "assign, transfer and provide to [the plaintiff] all of [its] right, title and interest . . . with respect to all customers, including all customer applications, guarantees, certifications and all related agreements . . . ."

Additionally, Doran signed several waivers of mechanic's liens on behalf of various entities, including the plaintiff, that had furnished or had contracted to furnish services, labor or materials to the Chase Orchards subdivision.

On April 21, 2003,[6] the plaintiff filed a revised complaint alleging: (1) breach of contract against all five defendants; (2) quantum meruit against all five defendants; (3) unjust enrichment against all five defendants; (4) breach of personal guarantees against Chase Associates and Doran; (5) violations of CUTPA against Chase and Doran; (6) fraud against Chase Associates and Doran; (7) piercing the corporate veil of Chase Associates, Chase Homes and Chase Orchards against Chase and Doran; and (8) violations of RICO predicated on Chase and Doran's forgery of mechanic's lien waivers in violation of 18 U.S.C. § 1344.

Following a bench trial, the trial court determined that: (1) "the evidence does not support a conclusion that any defendant other than [Chase Orchards] had a contract with the plaintiff"; (2) Chase Orchards "had a valid and enforceable, although perhaps uncollectible

---

[6] The plaintiff's original complaint was filed on March 8, 2002, and its first amended complaint was filed on January 13, 2003.

contract, [and] therefore neither quantum meruit nor unjust enrichment is appropriate"; (3) although Chase and Doran had executed credit agreements in favor of Laureno Lumber, "the assignment of November 25, 1996, is not sufficient to transfer a guarantee made one month later on [December 6, 1996]" and, therefore, "that guarantee was never legally transferred" to the plaintiff; (4) although Doran had signed waivers of mechanic's liens without authority to do so in violation of CUTPA, the plaintiff "impliedly [had] ratified the status quo" because it "knew, or should have known that Doran was signing these [lien] waivers"; (5) the plaintiff had failed to establish, by clear and convincing evidence, that Doran had committed fraud by signing waivers of mechanic's liens without authority to do so; (6) insufficient facts existed "to support a finding that the corporate veil should be pierced"; and (7) Doran had not violated RICO because "[t]he plaintiff is not a financial institution and there is insufficient evidence to support the plaintiff's claim that [Doran had] intended to deceive a lending institution in order to induce a lender to make a loan. There is no evidence that any financial institution suffered any damages as a result of [Doran's] unauthorized signature on the waivers of mechanic's liens." Accordingly, the trial court ruled in favor of the plaintiff with respect to its breach of contract claim against Chase Orchards and its CUTPA claim against Doran, but in favor of the remaining defendants with respect to the plaintiff's remaining claims. The trial court rendered judgment in accordance with its verdict and awarded the plaintiff compensatory damages in the amount of $133,442.68[7] against both Chase Orchards and Doran.

---

[7] The trial court originally awarded the plaintiff compensatory damages in the amount of $152,627.82. Doran subsequently filed a motion for articulation requesting the court to articulate "the legal and factual basis for its award of $152,627.82 to the [p]laintiff, for damages stemming from the [p]laintiff's CUTPA claim . . . ." The trial court denied the motion, but later explained that, although it had "awarded $152,627.82 . . . [t]he plaintiff in its brief of July 21, 2005, concedes that this number should be $133,442.68. . . . Accordingly, the award should have been $133,442.68."

The trial court declined, however, to award punitive damages or attorney's fees under CUTPA because the plaintiff knew, or should have known, that Doran had been signing mechanic's lien waivers on its behalf. This appeal and cross appeal followed.[8]

## I

We first address Doran's claims on the cross appeal. Doran claims that the trial court improperly concluded that he had violated CUTPA because: (1) the plaintiff failed to establish that Doran's forgery of mechanic's lien waivers proximately had caused the plaintiff to suffer an ascertainable loss; and (2) the plaintiff impliedly had ratified Doran's conduct. We agree with Doran's first claim and, therefore, we need not reach his second claim.

As a preliminary matter, we first delineate the basic elements of a CUTPA cause of action. "CUTPA provides that '[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.' General Statutes § 42-110b (a). In order to enforce this prohibition, CUTPA provides a private cause of action to '[a]ny person who suffers any ascertainable loss of money or

---

[8] The plaintiff filed a motion for articulation requesting the court to articulate the law and facts upon which it had relied: (1) to conclude that "Chase Associates, Inc., did not have a contract, either implied or in fact, with the [p]laintiff"; (2) to conclude that "the guarant[e]es had not been assigned to the [p]laintiff"; (3) to decline "to award punitive damages and attorney's fees in the CUTPA count of the complaint"; (4) to conclude that "the plaintiff is not a financial institution when determining it could not bring a RICO claim"; and (5) to conclude that "the [p]laintiff must present actual evidence that a financial institution suffered damages." The trial court denied the motion for articulation and, thereafter, the plaintiff filed a motion for review in the Appellate Court. See Practice Book § 66-7. The Appellate Court granted the motion for review and partially granted the relief requested therein, ordering the trial court to articulate "the factual basis for its determination that the plaintiff is not a financial institution." The trial court subsequently articulated its judgment in accordance with the Appellate Court's order. See part II C of this opinion.

property, real or personal, as a result of the use or employment of a [prohibited] method, act or practice . . . .' General Statutes § 42-110g (a); see generally *Fink* v. *Golenbock*, 238 Conn. 183, 212–13, 680 A.2d 1243 (1996).

"Thus, in order to prevail in a CUTPA action, a plaintiff must establish both that the defendant has engaged in a prohibited act *and* that, 'as a result of' this act, the plaintiff suffered an injury. The language 'as a result of' requires a showing that the prohibited act was the proximate cause of a harm to the plaintiff. See generally *Haesche* v. *Kissner*, 229 Conn. 213, 223–24, 640 A.2d 89 (1994). With regard to the requisite causal element, it is axiomatic that proximate cause is '[a]n actual cause that is a substantial factor in the resulting harm . . . .' *Stewart* v. *Federated Dept. Stores, Inc.*, 234 Conn. 597, 606, 662 A.2d 753 (1995). The question to be asked in ascertaining whether proximate cause exists is 'whether the harm which occurred was of the same general nature as the foreseeable risk' created by the defendant's act. . . . *Doe* v. *Manheimer*, 212 Conn. 748, 758, 563 A.2d 699 (1989)." (Emphasis in original.) *Abrahams* v. *Young & Rubicam, Inc.*, 240 Conn. 300, 306, 692 A.2d 709 (1997); cf. *Vacco* v. *Microsoft Corp.*, 260 Conn. 59, 88, 793 A.2d 1048 (2002) ("notwithstanding the broad language and remedial purpose of CUTPA, we have applied traditional common-law principles of remoteness and proximate causation to determine whether a party has standing to bring an action under CUTPA"). "Although the issue of causation generally is a question reserved for the trier of fact . . . the issue becomes one of law when the mind of a fair and reasonable person could reach only one conclusion . . . ." (Internal quotation marks omitted.) *Abrahams* v. *Young & Rubicam, Inc.*, supra, 307.

Assuming, arguendo, that the trial court properly found that Doran had signed mechanic's lien waivers

without authority to do so and that this conduct constituted an unfair trade or practice within the meaning of § 42-110b (a), the trial court nonetheless improperly found that Doran had violated CUTPA because Doran's conduct was not the proximate cause of the plaintiff's injury. The plaintiff conceded at oral argument before this court that it never had filed mechanic's liens on the municipal land records to recover the cost of the construction materials delivered to the Chase Orchards subdivision. Additionally, at trial, the plaintiff failed to present any evidence to establish that, but for Doran's forgery of mechanic's lien waivers, the plaintiff would have filed mechanic's liens to recover these costs or, alternatively, would not have extended credit to Chase Orchards for the purchase of these materials in the first instance. Because the plaintiff failed to adduce any evidence from which the trial court reasonably could have inferred that the plaintiff's loss had been caused by Doran's forgery of mechanic's lien waivers, we are compelled to conclude that the trial court improperly found that Doran had violated CUTPA.[9]

_____

[9] The evidence presented at trial established that the proximate cause of the plaintiff's loss was not Doran's forgery of mechanic's lien waivers, but, rather, Chase Orchards' failure to remit payment for the construction materials at issue. In its revised complaint, the plaintiff alleged that the defendants had violated CUTPA not only by forging mechanic's lien waivers, but also by: (1) ordering construction materials for which they knew or should have known they were not going to pay; (2) concealing Doran's forgery of mechanic's lien waivers; (3) creating various corporate entities for the purpose of avoiding payment for goods and supplies ordered from the plaintiff; and (4) failing to inform the plaintiff of the appropriate corporate entities that had purchased the goods and supplies for the purpose of avoiding payment. The trial court neither addressed nor resolved these claims, however, and the plaintiff never filed a motion for articulation requesting the trial court to address them. See footnote 8 of this opinion. Accordingly, they are not properly before this court. See *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 53, 717 A.2d 77 (1998) ("[i]t is . . . the responsibility of the appellant to move for an articulation or rectification of the record where the trial court has failed to state the basis of a decision . . . to clarify the legal basis of a ruling . . . or to ask the trial judge to rule on an overlooked matter" [citations omitted]); *Crest Pontiac Cadillac, Inc.* v. *Hadley*, 239 Conn. 437, 444 n.10, 685 A.2d 670

## II

We next address the plaintiff's claims on appeal. The plaintiff claims that: (1) the trial court's factual finding that Chase Orchards, rather than Chase Associates, had contracted with the plaintiff for the purchase of construction materials was clearly erroneous; (2) the trial court improperly concluded that the credit agreements executed by Chase and Doran in December, 1996, had not been assigned to the plaintiff; and (3) the trial court improperly found that Doran had not violated RICO by forging mechanic's lien waivers.[10] We reject each of these claims in turn.

## A

The plaintiff first claims that the trial court improperly found that Chase Orchards, rather than Chase Associates, had contracted with the plaintiff for the purchase of construction materials delivered to the Chase Orchards subdivision. We disagree.

"It is well settled that the existence of a contract is a question of fact." *Burse* v. *American International Airways*, 262 Conn. 31, 42, 808 A.2d 672 (2002); see also *Simmons* v. *Simmons*, 244 Conn. 158, 187, 708 A.2d 949 (1998). "The law governing [our] limited appellate review is clear. A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence and determine credibility, we

(1996) (claims neither addressed nor decided by trial court are not properly before reviewing court).

[10] The plaintiff also claims that the trial court abused its discretion by declining to award punitive damages and attorney's fees under CUTPA. In light of our conclusion in part I of this opinion that the trial court improperly found that Doran had violated CUTPA, we need not address this claim.

give great deference to its findings. . . . In reviewing factual findings, [w]e do not examine the record to determine whether the [court] could have reached a conclusion other than the one reached. . . . Instead, we make every reasonable presumption . . . in favor of the trial court's ruling." (Citations omitted; internal quotation marks omitted.) *Wesley* v. *Schaller Subaru, Inc.*, 277 Conn. 526, 558–59, 893 A.2d 389 (2006) (*Pellegrino, J.*, dissenting).

At trial, Doran testified that he had ordered the construction materials at issue in the present case on behalf of Chase Orchards, and that he verbally had informed Laurence Laureno, former coowner of Laureno Lumber and a sales representative of the plaintiff, of this fact.[11] Furthermore, it is undisputed that the plaintiff had delivered the construction materials to the Chase Orchards subdivision, which was owned and being developed by Chase Orchards, and that the payments remitted to the plaintiff had been made by Chase Orchards via corporate checks issued from a Chase Orchards checking account. This evidence amply supports the trial court's factual finding that Chase Orchards, rather than Chase Associates, had contracted with the plaintiff for the purchase of the construction materials.[12] Accord-

[11] Laureno testified, however, that Doran never had informed him of this fact and, if he had, Laureno would have required Doran to execute a credit agreement on behalf of Chase Orchards. It is well established, however, that "[i]t is the [trier of fact's] exclusive province to weigh the conflicting evidence, determine the credibility of witnesses and determine whether to accept some, all or none of a witness' testimony . . . ." (Internal quotation marks omitted.) *Lydall* v. *Ruschmeyer*, 282 Conn. 209, 236 n.20, 919 A.2d 421 (2007).

[12] The plaintiff claims that its billing invoices, which identify Chase Associates as the purchaser of the construction materials, create a rebuttable presumption with respect to the identity of the purchaser. The plaintiff cites no legal authority and provides no legal analysis in support of this claim, however, and we therefore decline to review it. See *Knapp* v. *Knapp*, 270 Conn. 815, 823 n.8, 856 A.2d 358 (2004) ("We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . Where the

ingly, we conclude that the trial court's factual finding is not clearly erroneous.

B

The plaintiff next claims that the trial court improperly rendered judgment in favor of the defendants with respect to the plaintiff's breach of guarantee claim because the trial court improperly concluded that the December, 1996 credit agreements between Chase, Doran and Laureno Lumber never had been assigned to the plaintiff. Specifically, the plaintiff claims that the November 25, 1996 assignment between the plaintiff and Laureno Lumber encompassed all *future* credit agreements executed in favor of Laureno Lumber and, therefore, included the December, 1996 credit agreements. We conclude that the plaintiff's claim fails regardless of whether the December, 1996 credit agreements properly had been assigned to the plaintiff.

"[W]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." (Internal quotation marks omitted.) *Schoonmaker* v. *Lawrence Brunoli, Inc.*; 265 Conn. 210, 227, 828 A.2d 64 (2003); see also *Montoya* v. *Montoya*, 280 Conn. 605, 612, 909 A.2d 947 (2006) ("[i]f a contract is unambiguous within its four corners, intent of the parties is a question of law requiring plenary review" [internal quotation marks omitted]). Under the terms of the credit agreements, Chase and Doran agreed "unconditionally, jointly and severally, [to] guarantee the payment of any and all amounts owed to [Laureno Lumber] *by the* [*b*]*uyer* . . . ." (Emphasis added.) Although the term "buyer" is not defined in the credit agreements, we conclude that it plainly and unambiguously refers to

parties cite no law and provide no analysis of their claims, we do not review such claims." [Internal quotation marks omitted.]).

the credit applicant, namely, Chase Associates.[13] See *Enviro Express, Inc.* v. *AIU Ins. Co.*, 279 Conn. 194, 200, 901 A.2d 666 (2006) ("whether a contract is ambiguous is a question of law for the court"). Accordingly, under the terms of these agreements, Chase and Doran agreed to guarantee personally the payment of all amounts owed to Laureno Lumber by Chase Associates.

As explained in part II A of this opinion, however, the trial court reasonably found that Chase Associates had not contracted with the plaintiff for the purchase of the construction materials delivered to the Chase Orchards subdivision and, therefore, is not liable to the plaintiff for the cost of these materials. Even if we were

---

[13] The credit agreement, entitled "credit application," lists the name of the account as "Chase Associates, Inc.," the address of the applicant as 2033 Ellington Road in South Windsor, and the type of account as "[c]orporation." Under the heading "guarant[ee]," the agreement provides: "In consideration of [Laureno Lumber] extending credit to [b]uyer, the undersigned individuals unconditionally, jointly and severally, guarantee the payment of any and all amounts owed to [Laureno Lumber] by the [b]uyer and agrees to pay all costs of collection, including a reasonable attorney's fee, together with interest on any unpaid balance at the highest rate allowed by law, where applicable. The liability of the undersigned shall not be affected by an indulgence, compromise, settlement, extension or variation of terms, and notice of presentment and dishonor is hereby waived. Consent is hereby given to the extension of time for payment at the discretion of [Laureno Lumber] and to any subsequent increases in the amount of credit advanced to [b]uyer from time to time. The undersigned do hereby waive any and all notice of default in payment by the [b]uyer and further agrees to assume the responsibility of informing [Laureno Lumber] in writing (certified mail) of any change in ownership or those having an interest in [b]uyer corporation, proprietorship or partnership. Failure to notify [Laureno Lumber] of any such change in the status of the [b]uyer shall operate to extend and apply this [g]uarant[ee] to the obligations of the subsequent entity." Construing the credit agreement as a whole, we conclude that the term "buyer" refers to the credit applicant, Chase Associates, and that the term "undersigned individuals" refers to the individuals whose signatures appear at the bottom of the credit application, Chase and Doran. See *Enviro Express, Inc.* v. *AIU Ins. Co.*, 279 Conn. 94, 199, 901 A.2d 666 (2006) ("[t]he contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible to do so" [internal quotation marks omitted]).

to assume, arguendo, that the December, 1996 credit agreements properly had been assigned to the plaintiff, Chase and Doran nonetheless are not liable to the plaintiff for the cost of the construction materials at issue because Chase Associates is not liable to the plaintiff for the cost of these materials.[14] Stated simply, Chase and Doran agreed to guarantee personally only the debts owed to Laureno Lumber and its assigns by Chase Associates, which is not the corporate entity responsible for the debt at issue in the present case. Accordingly, the trial court properly rendered judgment in favor of the defendants with respect to the plaintiff's breach of guarantee claim.

C

Lastly, the plaintiff claims that the trial court improperly found that Doran had not violated RICO by signing waivers of mechanic's liens with an intent to defraud a financial institution in violation of 18 U.S.C. § 1344.[15] We disagree.

[14] The plaintiff claims that Chase Associates nonetheless is liable for the debt incurred by Chase Orchards because "[t]he record [is] devoid of written advice from [the defendants] to [the plaintiff] that [Chase] Associates had been discontinued as the builder entity in favor of [Chase] Orchards . . . ." In support of this claim, the plaintiff relies on the credit agreement, which provides in relevant part: "The undersigned [Chase and Doran] . . . agrees to assume the responsibility of informing [Laureno Lumber] in writing (certified mail) of any change in ownership or those having an interest in [b]uyer corporation [Chase Associates], proprietorship or partnership. Failure to notify [Laureno Lumber] of any such change in the status of the [b]uyer shall operate to extend and apply this [g]uarant[ee] to the obligations of the subsequent entity." We reject this claim because the plaintiff failed to adduce any evidence indicating that Chase Associates had undergone a change in ownership or a change in status resulting in the establishment of Chase Orchards as a subsequent corporate entity.

[15] The plaintiff claims that the trial court improperly dismissed its RICO claim for lack of subject matter jurisdiction because it improperly concluded that the plaintiff, as a nonfinancial institution, lacked standing to raise a RICO claim predicated on the defendants' alleged commission of bank fraud in violation of 18 U.S.C. § 1344. Our review of the record reveals, however, that the trial court did not dismiss the plaintiff's RICO claim for lack of standing, but, rather, rendered judgment in favor of the defendants on the

The following additional facts are relevant to our resolution of this claim. The trial court rendered judgment in favor of the defendants on the plaintiff's RICO claim, finding that "[t]he plaintiff is not a financial institution and there is insufficient evidence to support the plaintiff's claim that the defendant intended to deceive a lending institution in order to induce a lender to make a loan. There is no evidence that any financial institution suffered any damages as a result of [Doran's] unauthorized signature on the waivers of mechanic's liens." Thereafter, the plaintiff filed a motion for articulation in the trial court requesting that the court articulate, inter alia, the legal and factual basis for its conclusions that the plaintiff is not a financial institution and that it must present actual evidence that a financial institution suffered damages as a result of Doran's forgery of mechanic's lien waivers. The trial court denied the motion for articulation and, thereafter, the plaintiff filed a motion for review in the Appellate Court. The Appellate Court granted the plaintiff's motion for review and partially granted the relief requested therein, ordering the trial court to articulate the factual basis for its determination that the plaintiff is not a financial institution.

The trial court subsequently articulated its judgment in relevant part as follows: "The plaintiff is a general purpose lumber company which sold building supplies to some of the defendants. There was no evidence or any allegation that [the plaintiff] was a financial institution.

merits of this claim because insufficient evidence existed to find that the defendants had engaged in racketeering activity by committing bank fraud in violation of 18 U.S.C. § 1344. See generally *Fort Trumbull Conservancy, LLC* v. *New London*, 282 Conn. 791, 802, 925 A.2d 292 (2007) (standing implicates subject matter jurisdiction of court, and "court lacks discretion to consider the merits of a case over which it is without jurisdiction"). Accordingly, we address the plaintiff's claim only insofar as it appears to challenge the merits of the trial court's judgment.

"There is a split of authority in the federal court concerning whether a nonfinancial institution can base a civil RICO claim on bank fraud through 18 U.S.C. § 1344. This would appear to present a question of law.

"To the best of my recollection, there was no evidence that any financial institution was involved in this dispute.

"The claim was made in the plaintiff's posttrial brief dated July 21, 2005, that, '[i]t is common knowledge that most financial institutions require title insurance prior to loaning money pursuant to a note and mortgage.' There was no evidence offered to support this claim.

"There was no direct evidence that any defendant intended to expose a financial institution to loss. . . . While there may have been financial institution loans used for construction, I remember no evidence to that effect."

As previously explained, "[t]he law governing [our] limited appellate review is clear. A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings. . . . In reviewing factual findings, [w]e do not examine the record to determine whether the [court] could have reached a conclusion other than the one reached. . . . Instead, we make every reasonable presumption . . . in favor of the trial court's ruling." (Citations omitted; internal quotation marks omitted.) *Wesley* v. *Schaller Subaru, Inc.*, supra, 277 Conn. 558–59 (*Pellegrino, J.*, dissenting).

RICO provides a private right of action for "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter . . . ." 18 U.S.C. § 1964 (c). Section 1962 provides in relevant part that, "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C. § 1962 (c). The term "racketeering activity" is defined in relevant part as "any act which is indictable under . . . title 18, United States Code . . . section 1344 (relating to financial institution fraud) . . . ." 18 U.S.C. § 1961 (1) (B). An individual commits bank fraud in violation of § 1344 when he or she "knowingly executes, or attempts to execute, a scheme or artifice . . . to defraud a financial institution; or . . . to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises . . . ." Accordingly, to prevail on a civil RICO claim predicated on bank fraud, the plaintiff must establish, inter alia, that the defendants had committed bank fraud in violation of 18 U.S.C. § 1344, "[a]n essential element of [which] is intent to deceive a *bank* in order to obtain from it money or other property." (Emphasis in original; internal quotation marks omitted.) *Bressner* v. *Ambroziak*, 379 F.3d 478, 482 (7th Cir. 2004); see also *United States* v. *Laljie*, 184 F.3d 180, 189 (2d Cir. 1999) (to establish bank fraud plaintiff must prove that "a bank was an actual or intended victim . . . i.e., that the defendant engage[d] in or attempt[ed] to engage in a pattern or course of conduct designed to deceive a federally chartered or insured financial institution into releasing property, with the intent to victimize the insti-

tution by exposing it to actual or potential loss" [citation omitted; internal quotation marks omitted]).

Our thorough review of the record reveals that the plaintiff failed to adduce any evidence indicating that Doran had submitted, or had intended to submit, the forged waivers of mechanic's liens to a financial institution in an attempt to procure a mortgage, loan or similar funds.[16] We therefore conclude that the trial court's factual finding that Doran had not deceived, and had not intended to deceive, a financial institution by forging mechanic's lien waivers amply is supported by the record.[17] Accordingly, we conclude that the trial court's

[16] Although the trial court reasonably could have inferred, based on the evidence presented at trial, that the forged lien waivers had been submitted to the Connecticut Attorneys Title Insurance Company, the plaintiff failed to present any evidence to establish that that company is a financial institution. See footnote 17 of this opinion for statutory definition of financial institution. Additionally, the plaintiff failed to present any evidence to establish that that company, upon receiving the forged lien waivers, had submitted them to a financial institution.

[17] To the extent that the plaintiff challenges the propriety of the trial court's factual finding that it is not a financial institution within the meaning of 18 U.S.C. § 1344, we reject the plaintiff's claim. Title 18 of the United States Code, § 20, defines the term " 'financial institution' " as:

"(1) an insured depository institution (as defined in section 3 [c] [2] of the Federal Deposit Insurance Act);

"(2) a credit union with accounts insured by the National Credit Union Share Insurance Fund;

"(3) a Federal home loan bank or a member, as defined in section 2 of the Federal Home Loan Bank Act (12 U.S.C. § 1422), of the Federal home loan bank system;

"(4) a System institution of the Farm Credit System, as defined in section 5.35 (3) of the Farm Credit Act of 1971;

"(5) a small business investment company, as defined in section 103 of the Small Business Investment Act of 1958 (15 U.S.C. § 662);

"(6) a depository institution holding company (as defined in section 3 [w] [1] of the Federal Deposit Insurance Act);

"(7) a Federal Reserve bank or a member bank of the Federal Reserve System;

"(8) an organization operating under section 25 or section 25 (a) of the Federal Reserve Act; or

"(9) a branch or agency of a foreign bank (as such terms are defined in paragraphs [1] and [3] of section 1 [b] of the International Banking Act of 1978)."

finding that Doran had not engaged in racketeering activity, as that term is defined by § 1961 (1) (b), is not clearly erroneous.

The judgment is reversed only insofar as it relates to the fifth count of the revised complaint alleging violations of CUTPA, and the case is remanded to the trial court with direction to render judgment on that count in favor of the defendants. The judgment is affirmed in all other respects.

In this opinion the other justices concurred.

Because the plaintiff failed to present any evidence to establish that it satisfies the statutory definition of a financial institution, we conclude that the trial court's factual finding is not clearly erroneous.

* The listing of justices reflects their seniority status as of the date of oral argument.